BOMAR v. MEANS.

1. FRAUD.—Finding of fact that mortgages, bills of sale, &c., were in fraud of creditors, and that mortgagee did not understand purport of papers at time of execution, sustained.

2. IBID.—JURISDICTION.—COURT OF EQUITY has jurisdiction of actions to set aside mortgages, &c., executed with intent to defraud creditors.

3. STATUTE OF LIMITATIONS not pleaded, and hence not an available plea, but the time necessary to bar this action had not elapsed.

4. LACHES.—Plaintiff not guilty of laches.

5. ADVANCEMENTS.—Finding of fact as to advancements affirmed.

6. FINDING OF FACT as to debt sustained.

7. RECEIVER.—FINDING OF FACT that receiver was necessary sustained.

8. EXCEPTIONS too general.

9. FRAUD.—Under facts here, it matters little what was the mental condition of mortgagee.

10. IBID.—PRACTICE.—CIRCUIT JUDGE is not required to state facts upon which he rests conclusion of fraud.

11. IBID.—FINDING OF FACT that no sufficient consideration supported the mortgages, &c., sustained.

Before WATTS, J., Spartanburg, May, 1897. Modified.

Action by Elisha Bomar, William T. Russell, Jane Holtzhouser, as administratrix of Andrew Holtzhouser, and J. A. Lee & Son *v.* H. F. Means, Albert G. Means, sr., and his children, to set aside certain mortgages, &c., as frauds against creditors. From judgment for plaintiff, all defendants, except H. F. Means, appeal.

*Messrs. W. W. Thompson* and *P. H. Nelson*, for appellants.

*Mr. D. E. Hydrick*, contra.

Sept. 28, 1898. The opinion of the Court was delivered by

MR. JUSTICE POPE. This appeal is from the decree of his Honor, R. C. Watts, presiding Judge, at the spring term, 1897, of the Court of Common Pleas for Spartanburg County in the above stated action, by which decree it is adjudged that the bill of sale, mortgage, and confession of judgment,

which were executed by Albert G. Means, the elder, to Robert Beaty, the elder, on the 30th day of December, 1887, were founded on debts, for the greater part pretensive, and were executed by said Albert G. Means while he was consciously insolvent, and in order to give an unjust preference, in violation of the statute law of this State; and, further, in order to hinder, delay, defeat, and defraud his creditors, against the Statute of Elizabeth, in force in this State. The Circuit Judge further found that Robert Beaty, the elder, was not fully conscious of these transactions had with him on 30th December, 1887, and yet, to a certain extent, participated in them. By his decree, Judge Watts directed that the defendant, H. G. Means, who had no lot or parcel in any of the transactions of A. G. Means with R. Beaty, the elder, should pay over to Wm. Mims, as receiver, the sum of $1,575.85, with interest thereon from 2d November, 1892. That the children of the said Albert G. Means, the elder, do deliver up the papers assigned to them by Robert Beaty, the elder, on the 30th day of December, 1887, to be cancelled; and, further, that said children do account with and turn over to William Munro, Esq., as receiver, all personal property mentioned in the bill of sale, except such as is described in the complaint and judgment in the case of Sarah J. Archer *et al. v.* J. G. Long, as sheriff of Union County; that all of the plantation of Albert G. Means, the elder, lying in Union County, except that part of the tract of land laid off to said Albert G. Means, the elder, as his homestead, be sold by said receiver. We need not set out fully the pleadings and proceedings in this action, except so much as relate to the exceptions, for they will be found fully disclosed in *Bomar et al.* v. *Means et al.*, 37 S. C., 520, and *Same Case*, 47 S. C., 190.

The defendants, except H. F. Means, appeal from Judge Watts' decree on twenty-two exceptions. These exceptions may be grouped as follows: *First.* Error in the Circuit Judge in deciding from the testimony that the bill of sale, mortgage, and judgment from Albert G. Means, the

elder, to Robert Beaty, the elder, was in fraud of the creditors of the former. *Second.* Error in the Circuit Judge in holding that at the date, 30th December, 1887, of bill of sale, &c., Robert Beaty, the elder, did not understand their character or scope, nor their nature, but was deceived and misled with relation thereto. *Third.* That Albert G. Means, the elder, was consciously insolvent on the 30th day of December, 1887, and attempted to include in the instruments executed on that day, advancements in money and property of Robert Beaty, the elder, to the wives of Albert G. Means, and to said Means in right of his wives.

We have given all the papers, especially the testimony of the witnesses, a thorough consideration, and we have endeavored to remember the high character of both Mr. Beaty and Mr. Means; but we regret to say that in a moment of weakness, according to the testimony, both parties yielded and lent themselves to the perpetration of a wrong. There can be no doubt that Mr. Means was indebted to his father-in-law, Robert Beaty, in the sum of $2,700, but not in the sum of $15,000. We look in vain to the testimony to explain the latter indebtedness. The only way it can be done is by including the advancements of Mr. Beaty to his daughters, the wives of Mr. Means, and some such advances to Mr. Means in right of his wives. Advancements by the parent to the child are gifts by the parent, to be reckoned as a part of the share of such child in case the parent dies intestate, or, in the event of testacy, under a direct provision in the will therefor. In no case, when the child becomes embarrassed by debt after the advancements have been made, can such advancements be changed in character so as to become debts, to the injury of creditors. The expressions of the old gentleman, Mr. Robert Beaty, in his last days, are pathetic, when he states he did not know they were including the advancements in the papers executed on 30th December, 1887, and also that if carried to Court he would tell the truth about the matter. So deeply was he moved that he *would* talk to his family

and friends about these matters, even when he was told such expressions of his might lead to trouble. The fact that judgments had been obtained against Mr. Means in Spartanburg County at the very date of those transactions in Union County, is not without signification; indeed, it serves to explain the haste with which all these papers were signed on the 30th day of December, 1887. On the 12th January, 1888, we find by the testimony that the sheriff of Union County is laying off the homestead of Mr. Means in his Union plantation. To show the haste of the parties on the 30th of December, 1887, to execute the papers, it will only be necessary to call attention to the testimony of Mr. James Means, who was then clerk of the Court of Common Pleas for Union County. He testifies that Mr. Means and his attorney came to his house after night on the 30th of December, 1887, and insisted that he should go to his office and enter the papers there. That the assignment of the judgment by Mr. Robert Beaty, the elder, to the children of Mr. Means had been signed by Mr. Beaty before the confession was made; and that the note upon which the confession was made was taken from the pocket of Mr. Means; that such note failed to correspond with the figures of the confession; and was, after that night, without the clerk's knowledge, taken from the judgment roll and other notes substituted. We agree with the Circuit Judge on this point. So, too, as to Mr. Beaty's failure to understand the purport of all these papers on the 30th December, 1887. We think the testimony points to him as nearly eighty-seven years of age at that time, quite deaf, and as one so frail at that time as to cause him to depend upon his son, Dr. Beaty, or his grand-son, C. H. Peake, Esq., to look after his business. Under such circumstances, it is not to be wondered at that Mr. Beaty should execute papers that he did not understand—especially as his act was merely assigning and setting over such papers to others, to wit: his grand-children. He certainly declared afterwards that he did not understand the papers, and regretted that his son,

Dr. Beaty, was not present to look after such business for him. The expression attributed to Mr. Beaty by one of the witnesses, "Are you sure this is all right?" to which question the attorney replied, "I assure you it is all right and there is nothing wrong about it," would indicate that Mr. Beaty did not comprehend the transactions. As to Mr. Means' insolvency, there can be no doubt. His home place in Spartanburg was mortgaged for nearly its value; his little farm in that county was also covered by an incumbrance; his plantation in Union, although large and valuable, and his personal property, could not pay and discharge his debts—especially after the homestead exemption was allowed. The eighth exception is overruled.

The first exception alleges error in the Circuit Judge in trying the case at bar when its facts did not warrant the Court on its equity side to take jurisdiction. We cannot understand the appellant. Surely at this day it cannot be doubted that it is the province of the court of equity to unravel just such cases as the present. Nor is there any doubt that the facts of the case, as developed in the action at its trial, sustain the jurisdiction. We have said as much as we have on this point because of our anxiety to fully cover, in our investigations, every point suggested in the appeal; whereas, in this exception, by reason of its generality, no specific error is alleged, and we might well have excused ourselves from any notice of it.

The second exception complains that the Circuit Judge erred in failing to sustain the plea of the statute of limitations, although such issue was presented in the argument of appellants' attorney. The statute of limitations is not pleaded by the appellants in their answer. Nor do the facts warrant any such plea. The instruments sought to be set aside were executed on 30th December, 1887. Judgments (some of them) were obtained in 1888. Return of *nulla bona* by sheriff was made in the year 1888. This action was commenced 23d December, 1891. There was no interval of six years after the right of action accrued.

Therefore, the technical plea of bar by statute of limitations is unavailing, because unfounded.

The third ground of appeal seeks to impute error to the Circuit Judge because he failed to find that the plaintiffs were not entitled to come into equity, because they had a plain and adequate remedy at law, which they had lost by their own laches. We remark that the appellants in their answer raise no such issue. But, independently of this fact, the facts and circumstances of this action, as developed on trial, show that this is peculiarly a case for the court of equity. In our former decision of this case—47 S. C., 202—we have held that the plaintiffs have not been guilty of *laches.*

The next error alleged in the Circuit Judge is in holding that this action was commenced in 1891 instead of July, 1895, when an amended complaint was filed. Our answer to this will be brief: The parties to this case have agreed by their "Case," now before us, "This action was commenced in the Court of Common Pleas for Spartanburg County on the *23d day of December, 1891,*" &c.

The next error alleged is that the Circuit Judge held, as a matter of fact, that at various times, from the year 1846 until 1887, Robert Beaty advanced to his daughter, Elizabeth, and to Mr. Means, in her right, various sums of money, and items of personal property, such as furniture, stock, and negroes. We do not see how the appellants can claim this as error. One of their own witnesses, Mr. Hill, of Mississippi, testified: "I think he made advancements to all of them" (children), "and to my present wife about $2,000 in money and a few slaves." In answer to the eighth interrogatory, which was: "8. Did not said Robert Beaty, sr., have a book wherein he kept the account of moneys gotten by his daughters and their husbands, and did he not intend to hold both daughters and sons in law responsible to the end of a just final division?" Answer. "He kept a book as inquired of, but do not know for what purpose." Now the appellants have, by their own

witnesses, proved that Mr. Beaty kept a book wherein he
set down advancements made to his children. And also
that he made such advancements in money and negroes. The
witnesses for the plaintiffs, respondents, also testified as to
this book and what it contained—to wit: advancements to
the children. Mr. Beaty said to witness that he did not
want Mr. Means to pay for money and negroes that he had
let his daughters have years ago. Smith Wright testified
that when Mr. C. H. Peake told his grand-father, Mr. Robert
Beaty, sr., about the papers executed on 30th December,
1887, being put on record, "Robert Beaty said: 'Oh, my!
they did not owe me that much. They must have put in
the negroes and money I had given them, and I did not
want them to put them in.'" This witness said he heard
Mr. Beaty tell Mr. Means' attorney, while he was preparing
the papers on the 30th December, 1887, that he did not
want him to put in the money and negroes that he had
given them years before. These books were before the Cir-
cuit Judge. He saw the entries and the dates, and upon
those entries and the testimony he based his finding of fact.
We have not the books before us, but we have the testimony.
We are satisfied with the finding of the Circuit Judge.

The sixth exception, relating to the finding of fact by the
Circuit Judge, that the book contained all the items of
money or other property advanced to the children
by Mr. Beaty, and, further, that we do not know,
only inferentially, that Mr. Beaty intended to require
A. G. Means to pay his note for $2,726.25, is the next ob-
jection to the Circuit decree. In regard to this exception,
we fail to see that it is not supported by the testimony—
indeed, it has abundant support there. As to the note for
$2,726.25, the Circuit Judge did not say, we do not know,
only inferentially, that Mr. Beaty intended to require A.
G. Means to pay this note. What the Circuit Judge did
say is, "Whether Mr. Beaty intended to require payment
of this note we do not know, except as we may gather
his intention from the fact that he took the note and held

it." There is no fault to be found with this finding of fact by the Circuit Judge.

The seventh exception is included in our first point. We are obliged to agree with the Circuit Judge that the papers executed on 30th December, 1887, were meant to exclude the other creditors, and, therefore, the ninth exception, relating to those matters, is overruled.

The tenth exception complains that the Circuit Judge erred in holding that, by means of instruments apparently *bona fide*, and for valuable consideration, A. G. Means placed his property beyond the reach of his honest creditors. We must say the testimony supports the Circuit Judge. As to the concluding sentence, that the Circuit Judge erred in further holding that the badges of fraud are numerous and convincing; the Circuit Judge was, no doubt, as we are, impressed with the high character of Mr. Means and Mr. Beaty—all he meant was to state frankly that proofs, in the case at bar, were numerous and convincing that the transactions of 30th December, 1887, could not stand in a court of equity, because wanting in *bona fides*.

The twelfth and thirteenth exceptions are covered by what we have already held.

As to the fourteenth exception, imputing error to the Circuit Judge in appointing Wm. Munro, esq., as receiver; we see no error here, either in the person appointed or in the fact that a necessity for a receiver existed.

The sixteenth and seventeenth exceptions are too general.

The eighteenth exception cannot be sustained, because it makes no difference whether Robert Beaty, the elder, was possessed of sufficient mental strength or will power to participate in the transactions between himself and Mr. Means on the 30th December, 1887, for he was but the conduit, so to speak, through whom A. G. Means' property was transferred to A. G. Means' children.

The nineteenth exception imputes error to the Circuit Judge for failing to state one or more facts upon which he based his conclusion of fraud. The Circuit Judge had all the testimony before him; he found that testimony sufficient. We have the same testimony, except the book, before us, and we have already indicated the points which we fear have put it out of our power to agree with the appellants.

We cannot, in passing upon the twentieth exception, hold that the bill of sale, confession' of judgment, and mortgage are based upon a sufficient consideration moving between Mr. Means and Robert Beaty, the elder. The facts of this case are at variance with the conclusion that any valuable consideration supported the transaction.

The twenty-first exception is too general.

And, lastly, the twenty-second exception is covered by our previous views herein expressed.

Before concluding, however, it does seem to us that inasmuch as the defendants, appellants, except H. F. Means and A. G. Means, sr., have received from their grand-father by assignment the honest *bona fide* debt of $2,726.25, with interest from 16th September, 1887, held by their grand-father, Robert Beaty, sr., against their father, A. G. Means, that they ought to be allowed to prove their debt against their father under these proceedings, but not as a judgment. No doubt the Circuit Judge meant this, for he finds that this was an honest indebtedness of A. G. Means to Robert Beaty, sr.

It is the judgment of this Court, that the judgment of the Circuit Court be modified to the extent of allowing the appellants, except H. F. Means and A. G. Means, sr., to prove their debt of $2,726.25 against the estate of A. G. Means, sr., but not in the form of a judgment, and, with this modification, that the decree of the Circuit Court be affirmed.